LAW OFFICES OF DAVID M. KINDOPP
DAVID M. KINDOPP, State Bar No. 183991
211 West Standley Street
Ukiah, California  95482
Telephone:      (707) 462-4080
Facsimile:      (707) 462-4096
Email:          lawoffice@kindopplaw.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

#### EUREKA DIVISION

* * * * * *

| | | |
|---|---|---|
| ROBERT FOREST, | ) | Case No. CV 09-05970 NJV |
| | ) | |
| Plaintiff, | ) | FIRST AMENDED COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF FORT BRAGG, FORT BRAGG | ) | JURY TRIAL DEMANDED |
| POLICE DEPARTMENT, FLOYD | ) | |
| HIGDON, and DOES 1 to 20, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, ROBERT FOREST (hereinafter referred to as "Plaintiff"), alleges as follows:

### GENERAL ALLEGATIONS

1.      Plaintiff is, and at all times mentioned herein was, a natural person and citizen of the United States; and, a resident of the State of California with his residence in the County of Mendocino.

2.      Plaintiff is informed and believes and thereupon alleges that Defendant CITY OF FORT BRAGG is, and at all times mentioned herein was, a city, public corporation, or other public entity within the meaning of *California Government Code* § 811.2.  Plaintiff timely filed a claim with Defendant CITY OF FORT BRAGG, which was rejected; and, thereafter, Plaintiff timely filed this civil action.

3.      Plaintiff is informed and believes and thereupon alleges that Defendant CITY OF FORT BRAGG POLICE DEPARTMENT is, and at all times alleged herein was, a political subdivision of Defendant CITY OF FORT BRAGG, within the meaning of *California Government Code* § 811.2.  Plaintiff timely filed a claim with Defendant CITY OF FORT BRAGG POLICE DEPARTMENT, which was rejected; and, thereafter, Plaintiff timely filed this civil action.

4.      Plaintiff is informed and believes and thereupon alleges that at all pertinent points in time mentioned herein, Defendant FLOYD HIGDON was and is natural person and citizen of the United States.

5.       Plaintiff is informed and believes and thereupon alleges that at all pertinent points in time mentioned herein, Defendant FLOYD HIGDON was a peace officer, within the meaning of *California Penal Code* §§ 830 et seq., employed by Defendant CITY OF FORT BRAGG and/or Defendant CITY OF FORT BRAGG POLICE DEPARTMENT.

6.      At all pertinent point in time mentioned herein and when engaging in wrongful acts and conduct alleged herein, Defendant FLOYD HIGDON was acting within the course and scope of his employment as a peace officer employed by Defendant CITY OF FORT BRAGG and/or Defendant CITY OF FORT BRAGG POLICE DEPARTMENT.

7.      At all pertinent point in times mentioned herein and when engaging in wrongful acts and conduct alleged herein, Defendant FLOYD HIGDON was acting under color of law, to wit, under the color of authority conferred upon him by the statutes, regulations, and/or laws of the State of California; and, the regulations, ordinances, policies, practices, and/or customs of Defendant CITY OF FORT BRAGG and/or Defendant CITY OF FORT BRAGG POLICE DEPARTMENT.

8.      Plaintiff is informed and believes and thereupon alleges that the wrongful actions and conduct of the Defendants that give rise to Plaintiff's claims and causes of action against said Defendants occurred within the County of Mendocino, State of California.

9.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 20 inclusive and, therefore, sue these defendants by such fictitious names. The Plaintiff will amend his First Amended Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereupon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein; and, that the Plaintiff's damages were proximately caused by such defendants.

10.      On November 8, 2006, Plaintiff was approached by a person named Stanley Douglass (hereinafter referred to as "Douglass") as he was leaving the Headlands Café, which was located on Laurel Street in the City of Fort Bragg, California.

11.      At the time, Douglass was a young adult black male in his 20's, wearing black clothing and a baseball cap, with the bill of the baseball cap cocked to one side. Douglass looked like a gang member.

12.     At the time, Plaintiff was 54 year-old well-known businessman and member of the community who lived in Mendocino, California, with his daughter.  Plaintiff had never seen or met Douglass prior to November 8, 2006.

13.     Immediately after Plaintiff left the Headlands Café, Douglass approached Plaintiff in an aggressive manner, grabbed the lapel of Plaintiff's jacket and pulled on it, looked Plaintiff in the eye, and demanded that Plaintiff give him a cigarette.  Plaintiff told Douglass that he did not smoke and that he should not be grabbing people and demanding things from them. Douglass put his face very close to Plaintiff's face and said: "I don't give a shit.  Give me a cigarette, bitch."  Plaintiff back up and walked away from Douglass.  Plaintiff feared for his safety as he thought Douglass was trying to start a fight with him.

14.     After Plaintiff back up and walked away from Douglass, Plaintiff began walking down Laurel Street toward Franklin Street in Fort Bragg.  Douglass followed closely behind Plaintiff and on several occasions walked right up next to and/or right behind Plaintiff and was saying things, such as, "I am a gang-banger from Frisco," "I am going to fuck you up," "Hit me, pop me, I am going to fuck you up," and "I going to kick your ass."  Douglass was also making threatening gestures with his hands toward Plaintiff as he was saying these things to him. Plaintiff became increasingly concerned for his safety as he walked down Laurel Street and Douglass continued to follow closely behind him making threatening statements to and gestures toward him.

15.     Plaintiff was walking toward his motorcycle, which was parked on Franklin Street in Fort Bragg.

16.     As Plaintiff turned the corner from Laurel Street and began walking down Franklin Street, he heard a young male adult, who was riding a bicycle, call his name.  When Plaintiff observed the person on the bicycle he recognized the young man as a person who used to work at the grocery store where Plaintiff shopped.  The person's name was Stephen Soria (hereinafter referred to as "Soria").  Unbeknownst to Plaintiff, Soria had seen Douglass approach Plaintiff in front of the Headlands Café, he had seen Douglass following very closely behind Plaintiff down Laurel Street, and he had observed Douglass saying things to Plaintiff in an aggressive manner as they walked down Franklin Street.  Soria did not hear very much of what was said between Douglass and Plaintiff as they walked down Laurel Street, but he did hear Plaintiff tell Douglass to get away from him at the corner of Laurel and Franklin Streets.  After Soria called Plaintiff's name, he asked Plaintiff what was going on.  Plaintiff asked Soria if he knew Douglass and if he could get Douglass away from him.  Soria engaged Douglass in a brief conversation.  Plaintiff kept walking toward where his motorcycle was parked.  Douglas stopped and talked to Soria for a moment.

17.     When Plaintiff was close to his motorcycle, Douglass started walking toward Plaintiff in a faster, more aggressive manner.  A little distance had been created between Plaintiff and Douglass when Douglass was talking to Soria.  Plaintiff started to get on his motorcycle, but realized that he could not get on his motorcycle to leave without being vulnerable to being attacked by Douglass as Douglass was too close to him and was closing the distance between the two of them very quickly.  As a result, Plaintiff turned and faced Douglass.  Plaintiff told Douglass to get away from him and to leave him alone.  When Douglass got about ten (10) feet from him, Plaintiff told Douglass that if he tried to assault Plaintiff, that Plaintiff would defend

himself.  In response, Douglass stated "I'm going to fuck you up" or similar words of the same effect.  Douglass kept coming toward Plaintiff gesturing to him like he wanted to get into a physical confrontation.  At that time, Douglass' right hand disappeared behind his back.  Plaintiff feared that Douglass was reaching for a weapon; and, in particular, a handgun.  Plaintiff feared for his life at that point and removed a handgun from his pocket and pointed the handgun at Douglass.  Douglass was within striking distance at this point.  At that point, Plaintiff did not believe that he had any other choice but to use his handgun in order to protect himself from what he believed to be imminent grave bodily harm.  Douglass kept coming toward Plaintiff even though he had had a handgun pointed at him.  Douglass showed no fear of the handgun.  Plaintiff had to push Douglass's right shoulder with his left hand in order to keep Douglass from continuing to advance toward him.  Douglass finally stopped advancing toward Plaintiff, but was still acting in a very aggressive manner, saying things like "I'm going to fuck you up."  Plaintiff backed away from Douglass and put his handgun away.  Douglass was continuing to yell at Plaintiff in an aggressive manner saying things like "Shoot me. Shoot me."  Plaintiff got on his motorcycle and drove away.

18.     Plaintiff was late to pick up his daughter.  Plaintiff drove to his house where he got his car and then drove to pick up his daughter who was at a friend's home.  Plaintiff intended to report the incident to law enforcement and request that charges be filed against Douglass the next morning.

19.     Douglass stood there yelling profanities at Plaintiff as he rode away on his motorcycle and then walked away from the scene of the incident.

- 6 -
FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg, et al;* Case No. C 09-05970 NJV

20.     Douglass followed Plaintiff approximately four hundred and fifty (450) feet from the Headlands Café on Laurel Street to where Plaintiff's motorcycle was parked on Franklin Street.

21.     At all pertinent points in time, Plaintiff had been issued a permit by the Mendocino County Sheriff's Department to carry a concealed firearm upon his person, pursuant to *California Penal Code* § 12050, which had been issued to him under emergency conditions.

22.     Several people observed various portions of the incident between Douglass and Plaintiff.  Some of the people who observed the incident called 911.

23.     As a result, several patrol units from Fort Bragg Police Department were immediately dispatched to the scene of the incident.

24.     On the way to the scene of the incident, Officer Lopez of the Fort Bragg Police Department observed Douglass at the corner of Main and Laurel Streets in Fort Bragg.  Douglass was detained by Officer Lopez as he matched the description of one of the individuals involved in the incident.  When Officer Lopez contacted Douglass, he handcuffed Douglass.  Officer Lopez handcuffed Douglass because he knew Douglass from his own prior contacts with Douglass as being an aggressive, confrontational, hostile, potentially violent, mentally unstable person.

25.     Douglass informed Officer Lopez that he asked Plaintiff for a cigarette, that Plaintiff did not provide him with a cigarette, that Douglass followed Plaintiff down Laurel Street, Douglass continued following Plaintiff onto Franklin Street, and then a "debate" occurred between Plaintiff and Douglass on Franklin Street.  Plaintiff is informed and believes and thereupon alleges that Douglass did not disclose his having engaged in an aggressive, hostile,

threatening, and/or confrontational manner toward Plaintiff for fear of his being arrested by law enforcement for threatening and/or assaulting Plaintiff.  However, Plaintiff is informed and believes and thereupon alleges that Douglass informed Officer Lopez that did not want to press charges against Plaintiff for any alleged assault against him.

26.     Officer Lopez prepared a report of his contact with and interview of Douglass. Officer Lopez's report omitted material information concerning his contact with and interview of Douglass.  Officer Lopez's report omitted the following material facts: (a) when he contacted and interviewed Douglass, he placed him in handcuffs; (b) Officer Lopez had prior contacts with Douglass and from those prior contacts Officer Lopez knew that Douglass was an aggressive, hostile, confrontational, potentially violent, mentally unstable person; and, (c) that Douglass was not interested in pressing charges against Plaintiff for any alleged assault.  The foregoing information was material because it is evidence that Douglass was the aggressor in the incident at the Plaintiff was merely acting in self-defense.  Plaintiff is informed and believes that Officer Lopez was instructed by Defendant FLOYD HIGDON to omit the foregoing material information from his report; or, that Defendant FLOYD HIGDON altered Officer Lopez's report to omit the foregoing material information.

27.     Soria observed Douglass in handcuffs and being questioned by Officer Lopez on the corner of Main and Laurel Streets in Fort Bragg.  At that time, Soria provided a statement to Officer Rafanan of the Fort Bragg Police Department.  Officer Rafanan prepared a report of his interview with Soria.  However, Officer Rafanan's report omitted material information about the incident and what Soria told him that he had observed concerning the incident, to wit: (a) Soria observed the entire incident from the Headlands Café until Plaintiff rode away on his motorcycle;

(b) Douglass' had closely followed Plaintiff about four hundred and fifty (450) feet down Laurel Street and onto Franklin Street while acting in a hostile, threatening, aggressive, confrontational, and/or potentially violent manner toward Plaintiff; (c) Plaintiff had asked Douglass to leave him alone and to go away on several occasions; (d) Plaintiff had asked Soria to get Douglass away from him; (e) Soria knew Plaintiff from Soria's former employment at a grocery store; (f) Douglass was the aggressor in the altercation; (g) Douglass was not afraid of the handgun when it was displayed by Plaintiff; (h) Plaintiff did not chase Douglass; (i) Douglass did not run away from Plaintiff of the scene of the altercation; (j) Douglass stood at the location of the altercation yelling profanities at Plaintiff as Plaintiff rode away on his motorcycle;  (k) Douglass walked away from the scene of the altercation; and, (l) Douglass was handcuffed by Officer Lopez when he was being questioned.  The foregoing information was material because it is evidence that Douglass was the aggressor in the incident at the Plaintiff was merely acting in self-defense. Plaintiff is informed and believes that Officer Rafanan was instructed by Defendant FLOYD HIGDON to omit the foregoing material information from his report; or, that Defendant FLOYD HIGDON altered Officer Rafanan's report to omit the foregoing material information.

28.     There were obvious material inconsistencies between the statement that Douglass provided to Officer Lopez and the statement that Soria provided to Officer Rafanan, both of which were provided shortly after the incident.  The statement that was provided by Soria, an independent witness, completely discredited the veracity of Douglass' statement that that he did not act in an aggressive, confrontational, threatening, or potentially violent manner toward Plaintiff prior to Plaintiff's displaying his firearm.  The material inconsistencies between Soria's

statement and Douglass' statement were known to the Fort Bragg Police Department shortly after

the incident occurred and prior to the arrest of Plaintiff.

29.     Defendant FLOYD HIGDON arrived at Laurel and Main Streets when Officer

Lopez was questioning Douglass.  As a result, Defendant FLOYD HIGDON observed that

Officer Lopez had placed Douglass in handcuffs while he was questioning him.  Prior to this

point in time, Defendant FLOYD HIGDON was aware that Douglass was an aggressive,

confrontational, hostile, potentially violent, mentally unstable person based on his own prior

contacts with Douglass and/or based on other contacts that other officers of the Fort Bragg Police

Department had had with Douglass.   Defendant FLOYD HIGDON was also aware that any time

Fort Bragg Police Department responded to call that involved Douglass, multiple officers were

always sent to the scene because Douglass was known as an aggressive, confrontational, hostile,

potentially violent, mentally unstable person.

30.     While Defendant FLOYD HIGDON was observing Officer Lopez question

Douglass about the incident, he was informed that there was another witness that needed to be

interviewed.  Defendant FLOYD HIGDON took a statement from Jacob Long (hereinafter

referred to as "Long") concerning what he observed of the altercation between Plaintiff and

Douglass.  Long informed Defendant FLOYD HIGDON that he only observed what transpired

between Plaintiff and Douglass on Franklin Street; and, that he did not observed anything that

may have occurred between them prior to his observing them on Franklin Street.  Long informed

Defendant FLOYD HIGDON that he was driving down Franklin Street when saw Plaintiff

pointing a handgun at Douglass.  Long continued driving down the street.  When Long ultimately

turned his vehicle around and came back to where Plaintiff and Douglass had been standing, he

FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg*, *et al;* Case No. C 09-05970 NJV

saw Plaintiff get on his motorcycle and drive away.  When Long drove around the corner onto Main Street, he saw that the Fort Bragg Police Department had placed Douglass in handcuffs and was questioning him.

31.     Defendant FLOYD HIGDON prepared a report of his interview with Long. Defendant FLOYD HIGDON intentionally included false statements in his report that he attributed to Long and he intentionally omitted material information from his report.  In his report, Defendant FLOYD HIGDON falsely attributed the following statements to Long: (a) that Plaintiff was waiving a handgun around; (b) that Douglass broke free from Plaintiff's hold; (c) that Douglass ran from the scene of the altercation for about half a block; and, (d) that Plaintiff chased Douglass down the street.  Long did not make any of the foregoing statements to Defendant FLOYD HIGDON.  Furthermore, Defendant FLOYD HIGDON intentionally omitted the following material information from his report: (a) Long only observed the very end of the entire incident between Plaintiff and Douglass; (b) Long would not be able to identify Plaintiff if he ever saw him again; (c) Douglass was in handcuffs when he was being interviewed by Officer Lopez; and, (d) Douglass was known by the Fort Bragg Police Department as an aggressive, confrontational, hostile, potentially violent, mentally unstable person.

32.     Without conducting a proper investigation and without probable cause to believe that Plaintiff committed a criminal offense, Defendant FLOYD HIGDON issued a notification to all law enforcement agencies for the arrest of Plaintiff based on the information that had been received from Douglass and the witnesses; and, he ordered Officer Rafanan to drive from Fort Bragg to the Plaintiff's residence in Mendocino to take Plaintiff into custody.

FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg*, *et al*; Case No. C 09-05970 NJV

33.     While on duty for the Fort Bragg Police Department on November 8, 2006, at about 7:00 p.m., Officer Lopez informed Sergeant Brandon Lee the events described in his report concerning a potential assault with a deadly weapon; and, that Defendant FLOYD HIGDON had issued a notification for the arrest of Plaintiff.

34.     At about 10:52 p.m., Plaintiff called law enforcement because he had heard from his ex-wife that he was a suspect concerning the incident that occurred earlier that evening. Sergeant Brandon Lee spoke with Plaintiff on the telephone.  During the telephone conversation, Plaintiff informed Sgt. Lee that: (a) Douglass had closely followed him down Laurel Street from the Headlands Café onto Franklin Street all the while threatening the physically harm him; (2) that he had to display his handgun to prevent Douglass from attacking him; (3) that he was very concerned for his safety prior to displaying his handgun; (4) that he intended to report the incident the following morning to the Fort Bragg Police Department; and, (5) that he did not report the incident immediately after it occurred because he was late to pick up his daughter in Mendocino.  Plaintiff agreed to come to the Fort Bragg Police Department at 9:00 a.m. the following morning to give a more detailed statement.  Sgt. Lee removed the notification for the Plaintiff's arrest because he did not believe that there was probable cause for Plaintiff's arrest based on the information that he had been provided by Officer Lopez about the incident, his knowledge of Douglass, and the statement that Plaintiff had provided to him over the telephone.

35.     Prior to November 8, 2006, Sgt. Lee had personal encounters with Douglass while an Officer with the Fort Bragg Police Department from which he learned that Douglass was an aggressive, hostile, confrontational, potentially violent person who was mentally unstable.

FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg*, *et al;* Case No. C 09-05970 NJV

36.     As of November 8, 2006, whenever the Fort Bragg Police Department responded to an incident that involved Douglass, extra caution was taken and at least two officers were sent because Douglass was known by the Fort Bragg Police Department as aggressive, hostile, confrontational, potentially violent person who was mentally unstable.

37.     On November 9, 2011, Plaintiff arrived at the Fort Bragg Police Department at about 8:50 a.m.  Upon his arrival at the Fort Bragg Police Department, Defendant FLOYD HIGDON began yelling over the police radio that a felony suspect, Plaintiff, was in the lobby and that he needed to be immediately arrested.  Sgt. Lee got on the radio and explained that he had removed the notification for Plaintiff's arrest, that the Plaintiff was voluntarily present at the Fort Bragg Police Department to provide a statement, that he would be at the Department shortly to interview Plaintiff, and that Plaintiff should not be arrested.

38.     When Sgt. Lee arrived at the Fort Bragg Police Department, Defendant FLOYD HIGDON was very angry with Sgt. Lee for having intervened in the arrest of Plaintiff. Defendant FLOYD HIGDON stated he was angry with Sgt. Lee because he felt that Sgt. Lee had changed the direction of the case in a manner that he did not like and that he wanted Plaintiff arrested.

39.     Sgt. Lee proceeded to interview Plaintiff over the objection of Defendant FLOYD HIGDON.  During his interview with Sgt. Lee on November 9, 2011, Plaintiff informed Sgt. Lee of Douglass' aggressive, hostile, confrontation, and threatening behavior toward him, of the threats that Douglass made to physically harm him, and of his fear for his physical safety and well being as a result of Douglass' aggressive, threatening, hostile, and confrontational behavior, as described in paragraphs 10-20 herein.  Defendant FLOYD HIGDON was listening to the

interview of Plaintiff that was being conducted by Sgt. Lee.  While Sgt. Lee was still interviewing Plaintiff, Defendant FLOYD HIGDON summoned Sgt. Lee from the interview room.  Defendant FLOYD HIGDON, a Lieutenant with the Fort Bragg Police Department, told Sgt. Lee to place Plaintiff under arrest for a felony violation of *California Penal Code* § 245, assault with a deadly weapon.  Sgt. Lee informed Defendant FLOYD HIGDON that he did not believe that there was probable cause to arrest Plaintiff for assaulting Douglass, let alone a felony violation of *California Penal Code* § 245.  At that point, Defendant FLOYD HIGDON gave Sgt. Lee a direct order to place Plaintiff under arrest for a felony violation of *California Penal Code* § 245, assault with a deadly weapon.  Sgt. Lee, following the direct orders of Defendant FLOYD HIGDON, went back to the interview room and informed Plaintiff that he was ordered to place Plaintiff under arrest.  Plaintiff was placed under arrest upon the direct orders of Defendant FLOYD HIGDON.  At that point, Sgt. Lee escorted Plaintiff to the booking area, where Plaintiff asked if he could post bail.  When Sgt. Lee informed Defendant FLOYD HIGDON that Plaintiff had requested to post bail, Defendant FLOYD HIGDON became enraged and began yelling at Sgt. Lee.  Defendant FLOYD HIGDON told Sgt. Lee that they could not accept bail at the Fort Bragg Police Department and ordered Sgt. Lee to transport Plaintiff to Ukiah, was is about a two hour drive from Fort Bragg, for booking and the posting of bail.  Sgt. Lee allowed Plaintiff to post bail in Fort Bragg because there were procedures in place that allowed a person to be booked and bail from the Fort Bragg Police Department, despite Defendant FLOYD HIGDON statements to the contrary.

40.    Plaintiff requested that he be allowed to make a complaint against or make a citizen's arrest of Douglass for his having threatened to physically harm Plaintiff.  Defendant

FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg*, *et al;* Case No. C 09-05970 NJV

FLOYD HIGDON refused to allow Plaintiff to make a complaint against or citizen's arrest of Douglass.

41.     Defendant FLOYD HIGDON used his position and influence as a Lieutenant with the Fort Bragg Police Department to order the arrest of Plaintiff when there was no probable cause to believe that he had committed a crime, much less a felony violation of *California Penal Code* § 245.

42.     Sgt. Lee prepared a report concerning his involvement in the investigation of the incident between Plaintiff and Douglass; and, his interview(s) of Plaintiff.  After Sgt. Lee's report was completed, it was intentionally altered without his knowledge, authorization, or consent.  Information was removed from and added to Sgt. Lee's report that was not contained within the original report that he authored.  Plaintiff is informed and believes that Defendant FLOYD HIGDON intentionally altered Sgt. Lee's report in an effort to convince the Mendocino County District Attorney's Office to prosecute Plaintiff for a felony violation of *California Penal Code* § 245.

43.     Plaintiff is informed and believes and thereupon alleges that Defendant FLOYD HIGDON also intentionally altered or otherwise intentionally manipulated the contents of the reports of Officer Lopez and Officer Rafanan in an effort to convince the Mendocino County District Attorney's Office to prosecute Plaintiff for a felony violation of *California Penal Code* § 245.

44.     Plaintiff is informed and believes and thereupon alleges that Defendant FLOYD HIGDON drafted and submitted his own false report concerning the statement that was provided

to him by witness Long in an effort to convince the Mendocino County District Attorney's Office to prosecute Plaintiff for a felony violation of *California Penal Code* § 245.

45.     Plaintiff is informed and believes and thereupon alleges that Defendant FLOYD HIGDON hand-delivered the law enforcement reports to the Mendocino County District Attorney's Office and insisted that Plaintiff be prosecuted for a felony violation of *California Penal Code* § 245, assault with a deadly weapon.

46.     Plaintiff is informed and believes and thereupon alleges Defendant FLOYD HIGDON also edited and/or altered the audio recording of Sgt. Lee's interview with Plaintiff that occurred on November 9, 2006.

47.     Plaintiff is informed and believes and thereupon alleges Defendant FLOYD HIGDON used his position and influence as a lieutenant with the Fort Bragg Police Department to have the 911 audio recordings destroyed because they contained material exculpatory evidence, to wit, that Douglass was engaging in aggressive, hostile, confrontational, and potentially violent behavior toward Plaintiff prior to Plaintiff's having displayed his firearm.

48.     On December 5, 2006, the Mendocino County District Attorney's Office filed a criminal complaint against Plaintiff for a felony violation of *California Penal Code* § 245, subdivision (a)(2).  The criminal complaint was filed against Plaintiff and he was prosecuted as a result of Defendant FLOYD HIGDON having intentionally suppressed materially exculpatory evidence; and, based on his having intentionally altered and/or manipulated the contents of the police reports and other evidence, which had been submitted to the Mendocino County District Attorney's Office.  Defendant FLOYD HIGDON engaged in the foregoing conduct to make it appear to the District Attorney's Office that Plaintiff did not have proper justification for

pointing a firearm at Douglass, thereby encouraging, facilitating, supporting, and/or ensuring the prosecution of Plaintiff.

49.    Plaintiff is informed and believes and thereupon alleges that Defendant FLOYD HIGDON was personal friends with the Deputy District Attorney that was responsible for making the initial charging decision as well as the ongoing prosecution of Plaintiff.   Plaintiff is informed and believes and thereupon alleges that Defendant FLOYD HIGDON also used personal relationship with the Deputy District Attorney in question in order to influence the prosecution of Plaintiff.

50.    Plaintiff is informed and believes and thereupon alleges that the Deputy District Attorney in question could not exercise independent judgment in deciding whether to initially file charges against Plaintiff because he had been provided materially false evidence that Defendant FLOYD HIGDON had intentionally manipulated to make it appear as though there was probable cause to believe that Plaintiff has committed a violation of *California Penal Code* § 245; and, Defendant FLOYD HIGDON used his personal relationship with the Deputy District Attorney in question to ensure that charges would be filed against Plaintiff.

51.    Plaintiff is informed and believes and thereupon alleges that the Deputy District Attorney in question ultimately became aware that Defendant FLOYD HIGDON had intentionally manipulated the reports and other information that had been provided to the Mendocino County District Attorney's Office in order to ensure the prosecution of Plaintiff. Plaintiff is informed and believes and thereupon alleges that the that the Deputy District Attorney in question failed to exercise independent prosecutorial discretion at that point in time because of his personal relationship with Defendant FLOYD HIGDON.

52.     Plaintiff is informed and believes and thereupon alleges, during the prosecution of Plaintiff, Sgt. Lee became aware that his original report had been altered and he reported the foregoing to the Chief of Police of the FORT BRAGG POLICE DEPARTMENT.

53.     Plaintiff is informed and believes and thereupon alleges that, during the prosecution of Plaintiff, the FORT BRAGG POLICE DEPARTMENT and the CITY OF FORT BRAGG also became aware that Defendant FLOYD HIGDON omitted material exculpatory information from his report concerning his interview of witness Jacob Long and that he had included false statements in his report that he had attributed to witness Long (set forth hereinabove).

54.     Plaintiff is informed and believes and thereupon alleges that Defendant FLOYD HIGDON instructed one or more witnesses not to speak with the defense.  Plaintiff is informed and believes and thereupon alleges that Defendant FLOYD HIGDON told one or more witnesses not to speak to the defense because the witness(es) possessed exculpatory information, to wit, the witness(es) observed Douglass acting in a hostile, aggressive, confrontation, and potentially violent manner toward Plaintiff on November 8, 2006, prior to Plaintiff's having displayed his firearm.

55.     During the prosecution of Plaintiff, Plaintiff's defense attorneys made repeated requests from the Mendocino County District Attorney's Office for an investigation of and/or any information that was in the possession of the Defendants concerning Douglass' mental status, mental health, and/or mental history; and, Douglass' prior acts of and/or propensity to engage in hostile, aggressive, combative, confrontational, and/or violent behavior.  Defendants were aware of these requests that were made by Plaintiff's defense attorneys.  Defendants were aware that

FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg*, *et al*; Case No. C 09-05970 NJV

Douglass was a hostile, aggressive, combative, confrontational person.  Plaintiff is informed and believes and thereupon alleges that Defendants were also aware that Plaintiff has been diagnosed with one or mental disorders including a bipolar disorder and/or schizophrenia for which he was seeing a licensed medical doctor and prescribed medication.  Despite the foregoing, the Defendants did not disclose this material exculpatory information to Plaintiff or Plaintiff's defense counsel during the course of the criminal prosecution of Plaintiff; and, Defendants portrayed Douglass as a passive person with no history of any aggressive, confrontational, or violent behavior or any mental disease or disorder.

56.     Plaintiff is informed and believes and thereupon alleges that, during the prosecution of Plaintiff, Defendant FORT BRAGG POLICE DEPARTMENT and Defendant CITY OF FORT BRAGG became aware of the wrongful conduct of Defendant FLOYD HIGDON, as alleged herein, but failed to take appropriate action to investigate and/or impose appropriate disciplinary action against him for his wrongful conduct; they failed to inform the Mendocino District Attorney's Office as to the nature and extent of Defendant FLOYD HIGDON'S wrongful conduct; and, they failed to recommend the prosecution of Defendant FLOYD HIGDON for a violation of *California Penal Code* § 118.1.  Defendant FORT BRAGG POLICE DEPARTMENT and Defendant CITY OF FORT BRAGG effectively approved and ratified the wrongful conduct of Defendant FLOYD HIGDON by taking no action.  Moreover, Plaintiff is informed and believes and thereupon alleges that Defendant FORT BRAGG POLICE DEPARTMENT and Defendant CITY OF FORT BRAGG have attempted to hide and conceal the nature and extent of the wrongful conduct of Defendant FLOYD HIGDON by not conducting a proper investigation into his wrongful conduct and by instructing all of the officers and/or

- 19 -
FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg, et al;* Case No. C 09-05970 NJV

employees of the Fort Brag Police Department including, but not limited to, Officer Lee, Officer

Lopez, and Officer Rafanan, not to discuss the matter with anyone, especially anyone who

inquires on behalf of Plaintiff.

57.    As a result of the wrongful conduct of Defendants, as alleged herein, Plaintiff had

to suffer the humiliation, anxiety, and mental and emotional distress associated with being a

defendant in a felony criminal prosecution.

58.    As a result of the wrongful conduct of Defendants, as alleged herein, Plaintiff had

to hire criminal defense attorneys and investigators at significant expense in order to defend

himself and to conduct a proper, unbiased investigation into the incident and Douglass'

background.

59.    On January 18, 2008, the criminal charges against Plaintiff were dismissed upon

motion of the Mendocino County District Attorney's Office.  However, Plaintiff suffered the

humiliation, anxiety, mental and emotional distress, and expense of defending himself against the

criminal charges for over a year.

60.    Even though the criminal charges were ultimately dismissed against Plaintiff, he

has suffered and continues to suffer injury to his good name and reputation in his community as a

result of his having been prosecuted.

61.    Even though the criminal charges were ultimately dismissed against Plaintiff, he

has been injured in that the Mendocino County Sheriff has revoked and refuses to reissue

Plaintiff a permit to carry a concealed firearm as a result of the false information that was

provided to the Mendocino County District Attorney's Office and the Mendocino County

Sheriff's Department by or on behalf of Defendants.  Plaintiff has suffered significant damages as

FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg, et al;* Case No. C 09-05970 NJV

a result of the revocation of his permit to carry a concealed firearm because Plaintiff had been issued the permit under emergency circumstances as a result of threats that had been made against his life.  As a result of Plaintiff's not having a permit to carry a concealed firearm, his freedom to leave his home to manage his businesses and his ability to otherwise enjoy life has been significantly diminished, curtailed, and inhibited, thereby resulting in a significant loss of income to Plaintiff and a significant reduction in his quality of life.

62.     Plaintiff is informed and believes and thereupon alleges that the wrongful acts of Defendant FLOYD HIGDON were motivated by and based on his hatred of, animosity toward, and/or jealousy of Plaintiff, which was based, at least in part, on their have working together as law enforcement officers for the Fort Bragg Police Department many years prior to November 8, 2006.

## JURISDICTION AND VENUE

63.     Plaintiff realleges and incorporates herein by reference paragraphs 1 though 62 as though fully set forth hereinafter.

64.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C §§ 1331, 1343, 2201, and 2202; and, 42 U.S.C. §§ 1983 and 1988.

65.     Venue for this action is properly in this Court pursuant to 28 U.S.C. §§ 1391 and Civil L.R. 3-2(d) and/or Civil L.R. 3-2(f).

## FIRST CLAIM FOR RELIEF FOR FALSE ARREST UNDER 42 U.S.C. § 1983

### (Plaintiff ROBERT FOREST v. Defendant FLOYD HIGDON)

66.     Plaintiff realleges and incorporates herein by reference paragraphs 1 though 65 as though fully set forth hereinafter.

67.     Defendant FLOYD HIGDON was acting under color of state law when he committed the wrongful conduct alleged herein.

68.     As a result of the wrongful conduct of Defendant FLOYD HIGDON, Plaintiff was deprived of rights, privileges, and/or immunities protected by the Constitution and laws of the United States including, but not limited to, his right to be free from unreasonable searches and seizures of his person in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

69.     As a result of the wrongful conduct of Defendant FLOYD HIGDON, Plaintiff has been damaged in an amount subject to proof at trial including, but not limited to, loss of use of his bail money, defense attorneys' fees, defense investigators' fees, and the other costs he incurred in defense of the criminal charges that were wrongfully filed against him.

70.     As a result of the wrongful conduct of Defendant FLOYD HIGDON, Plaintiff had to suffer the humiliation, anxiety, and mental and emotional distress associated with being a defendant in a felony criminal prosecution for over one year.

71.     As a result of the wrongful conduct of Defendant FLOYD HIGDON, Plaintiff suffered damage to his good name and reputation in an amount subject to proof at trial.

72.     As a result of the wrongful conduct of Defendant FLOYD HIGDON as alleged herein, Plaintiff has lost his permit to carry a concealed firearm upon his person.  As a result of the loss of Plaintiff's permit to carry a concealed firearm his freedom of movement has been significantly curtailed which has significantly impaired his quality of life and his ability to manage his businesses.  Plaintiff has been damaged in this regard in an amount subject to proof at trial.

73.     Plaintiff also seeks to recover his reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C § 1988.

**SECOND CLAIM FOR RELIEF FOR FALSE ARREST UNDER 42 U.S.C. § 1983**

**(Plaintiff ROBERT FOREST v. Defendants CITY OF FORT BRAGG and FORT BRAGG POLICE DEPARTMENT)**

74.     Plaintiff realleges and incorporates herein by reference paragraphs 1 though 73 as though fully set forth hereinafter.

75.     Plaintiff was harmed by Defendant FLOYD HIGDON'S conduct because Defendants CITY OF FORT BRAGG and FORT BRAGG POLICE DEPARTMENT had a custom, policy, and/or practice of:

(a)     failing to properly train, supervise, and/or discipline its peace officers;

(b)     not conducting a proper investigation into the background of alleged victims when a claim of self-defense is made by an alleged perpetrator;

(c)     not having proper policies, practices, and/or procedures to prevent an officer from: (i) manufacturing evidence; (ii) altering police reports; (iii) altering audio recordings of interviews with witnesses, victims, or alleged perpetrators of a criminal offense; (iv) destroying exculpatory evidence; and/or, (v) instructing percipient witnesses not to discuss a case with the defense;

(d)     not conducting a proper investigation into police misconduct when it becomes known to Defendants;

(e)     condoning and/or ratifying police misconduct by not conducting a proper investigation;

FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg*, *et al;* Case No. C 09-05970 NJV

(f)     condoning and/or ratifying police misconduct by not suspending, terminating, or otherwise disciplining its officer that were found to have engaged in police misconduct; and,

(g)     condoning and/or ratifying police misconduct by not recommending the prosecution of its peace office when they commit criminal offenses.

76.     The foregoing customs, policies, and/or practices of the Defendants CITY OF FORT BRAGG and FORT BRAGG POLICE DEPARTMENT constitute a deliberate indifference to Plaintiff's constitutional rights.

77.     The foregoing customs, policies, and/or practices of the Defendants CITY OF FORT BRAGG and FORT BRAGG POLICE DEPARTMENT were the cause of the deprivation of Plaintiff's constitutional rights to be free from an unreasonable searches and seizures of his person in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

78.     Plaintiff was harmed by the conduct of Defendant FLOYD HIGDON; and, the foregoing customs, policies, and/or practices of the Defendants CITY OF FORT BRAGG and FORT BRAGG POLICE DEPARTMENT.

79.     The customs, policies, and practices of Defendants CITY OF FORT BRAGG and FORT BRAGG POLICE DEPARTMENT were a substantial factor in causing Plaintiff's harm.

80.     As a result of the wrongful conduct of Defendants, Plaintiff has been damaged in an amount subject to proof at trial including, but not limited to, loss of use of his bail money, defense attorneys' fees, defense investigators' fees, and the other costs he incurred in defense of the criminal charges that were wrongfully filed against him.

81.     As a result of the wrongful conduct of Defendant, Plaintiff had to suffer the humiliation, anxiety, and mental and emotional distress associated with being a defendant in a felony criminal prosecution for over one year.

82.     As a result of the wrongful conduct of Defendants, Plaintiff suffered damage to his good name and reputation in an amount subject to proof at trial.

83.     As a result of the wrongful conduct of Defendants, Plaintiff has lost his permit to carry a concealed firearm upon his person.  As a result of the loss of Plaintiff's permit to carry a concealed firearm his freedom of movement has been significantly curtailed which has significantly impaired his quality of life and his ability to manage his businesses.  Plaintiff has been damaged in this regard in an amount subject to proof at trial.

84.     Plaintiff also seeks to recover his reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C § 1988.

**THIRD CLAIM FOR MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983**

**(Plaintiff ROBERT FOREST v. Defendant FLOYD HIGDON)**

85.     Plaintiff realleges and incorporates herein by reference paragraphs 1 though 84 as though fully set forth hereinafter.

86.     As alleged hereinabove, Defendant FLOYD HIGDON caused the initiation of a criminal prosecution against Plaintiff by intentionally, maliciously, and/or reckless submitting false police reports, withholding exculpatory evidence, and destroying exculpatory evidence; and, thereafter, Defendant FLOYD HIGDON improperly insisted on and pushed for the continued prosecution of Plaintiff, knowing that Plaintiff had not committed a criminal offense.

87.     Defendant FLOYD HIGDON caused the initiation of criminal proceedings against Plaintiff and insisted on the continued prosecution of Plaintiff based on his hatred of, animosity toward, and/or jealousy of Plaintiff.

88.     Defendant FLOYD HIGDON was acting under color of state law when he committed the wrongful conduct alleged herein.

89.     As a result of the wrongful conduct of Defendant FLOYD HIGDON, Plaintiff was deprived of rights, privileges, and/or immunities protected by the Constitution and laws of the United States including, but not limited to, his right to be free from unreasonable searches and seizures of his person and his right to due process of law in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

90.     As a result of the wrongful conduct of Defendant FLOYD HIGDON, Plaintiff has been damaged in an amount subject to proof at trial including, but not limited to, loss of use of his bail money, defense attorneys' fees, defense investigators' fees, and the other costs he incurred in defense of the criminal charges that were wrongfully filed against him.

91.     As a result of the wrongful conduct of Defendant FLOYD HIGDON, Plaintiff had to suffer the humiliation, anxiety, and mental and emotional distress associated with being a defendant in a felony criminal prosecution for over one year.

92.     As a result of the wrongful conduct of Defendant FLOYD HIGDON, Plaintiff suffered damage to his good name and reputation in an amount subject to proof at trial.

93.     As a result of the wrongful conduct of Defendant FLOYD HIGDON, Plaintiff has lost his permit to carry a concealed firearm upon his person.  As a result of the loss of Plaintiff's permit to carry a concealed firearm his freedom of movement has been significantly curtailed

which has significantly impaired his quality of life and his ability to manage his businesses. Plaintiff has been damaged in this regard in an amount subject to proof at trial.

94.     Plaintiff also seeks to recover his reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C § 1988.

### FOURTH CLAIM FOR MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

### (Plaintiff ROBERT FOREST v. Defendants CITY OF FORT BRAGG and FORT BRAGG POLICE DEPARTMENT)

95.     Plaintiff realleges and incorporates herein by reference paragraphs 1 though 94 as though fully set forth hereinafter.

96.     Plaintiff was harmed by Defendant FLOYD HIGDON'S conduct because Defendants CITY OF FORT BRAGG and FORT BRAGG POLICE DEPARTMENT had a custom, policy, and/or practice of:

(a)     failing to properly train, supervise, and/or discipline its peace officers;

(b)     not conducting a proper investigation into the background of alleged victims when a claim of self-defense is made by an alleged perpetrator;

(c)     not having proper policies, practices, and/or procedures to prevent an officer from: (i) manufacturing evidence; (ii) altering police reports; (iii) altering audio recordings of interviews with witnesses, victims, or alleged perpetrators of a criminal offense; (iv) destroying exculpatory evidence; and/or, (v) instructing percipient witnesses not to discuss a case with the defense;

(d)     not conducting a proper investigation into police misconduct when it becomes known to Defendants;

- 27 -
FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg*, et al; Case No. C 09-05970 NJV

(e)   condoning and/or ratifying police misconduct by not conducting a proper investigation;

(f)   condoning and/or ratifying police misconduct by not suspending, terminating, or otherwise disciplining its officer that were found to have engaged in police misconduct; and,

(g)   condoning and/or ratifying police misconduct by not recommending the prosecution of its peace office when they commit criminal offenses.

97.   The foregoing customs, policies, and/or practices of the Defendants CITY OF FORT BRAGG and FORT BRAGG POLICE DEPARTMENT constitute a deliberate indifference to Plaintiff's constitutional rights.

98.   The foregoing customs, policies, and/or practices of the Defendants CITY OF FORT BRAGG and FORT BRAGG POLICE DEPARTMENT were the cause of the deprivation of Plaintiff's constitutional rights to be free from an unreasonable searches and seizures of his person and his right to due process of law in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

99.   Plaintiff was harmed by the conduct of Defendant FLOYD HIGDON; and, the foregoing customs, policies, and/or practices of the Defendants CITY OF FORT BRAGG and FORT BRAGG POLICE DEPARTMENT.

100.   The customs, policies, and practices of Defendants CITY OF FORT BRAGG and FORT BRAGG POLICE DEPARTMENT were a substantial factor in causing Plaintiff's harm.

101.   As a result of the wrongful conduct of Defendants, Plaintiff has been damaged in an amount subject to proof at trial including, but not limited to, loss of use of his bail money,

defense attorneys' fees, defense investigators' fees, and the other costs he incurred in defense of the criminal charges that were wrongfully filed against him.

102.    As a result of the wrongful conduct of Defendant, Plaintiff had to suffer the humiliation, anxiety, and mental and emotional distress associated with being a defendant in a felony criminal prosecution for over one year.

103.    As a result of the wrongful conduct of Defendants, Plaintiff suffered damage to his good name and reputation in an amount subject to proof at trial.

104.    As a result of the wrongful conduct of Defendants, Plaintiff has lost his permit to carry a concealed firearm upon his person.  As a result of the loss of Plaintiff's permit to carry a concealed firearm his freedom of movement has been significantly curtailed which has significantly impaired his quality of life and his ability to manage his businesses.  Plaintiff has been damaged in this regard in an amount subject to proof at trial.

105.    Plaintiff also seeks to recover his reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C § 1988.

**FIFTH CLAIM FOR RELIEF FOR SUPPRESSION OF EXCULPATORY EVIDENCE IN VIOLATION OF *BRADY V. MARYLAND***

**(Plaintiff ROBERT FOREST v. All Defendants)**

106.    Plaintiff realleges and incorporates herein by reference paragraphs 1 though 105 as though fully set forth hereinafter.

107.    As alleged herein, Defendants intentionally failed to disclose materially exculpatory evidence and/or evidence that could have been used to impeach Douglass in violation of *Brady v. Maryland* (1963) 373 U.S. 83.  Defendants' failure to disclose exculpatory evidence prejudiced Plaintiff in his defense in the criminal prosecution of Plaintiff.  As a result of

the Defendants' failure to disclose exculpatory evidence, Plaintiff was denied due process of law in the underlying criminal proceedings.

108.    As a result of the wrongful conduct of Defendants, Plaintiff has been damaged in an amount subject to proof at trial including, but not limited to, loss of use of his bail money, defense attorneys' fees, defense investigators' fees, and the other costs he incurred in defense of the criminal charges that were wrongfully filed against him.

109.    As a result of the wrongful conduct of Defendants, Plaintiff had to suffer the humiliation, anxiety, and mental and emotional distress associated with being a defendant in a felony criminal prosecution for over one year.

110.    As a result of the wrongful conduct of Defendants, Plaintiff suffered damage to his good name and reputation in an amount subject to proof at trial.

111.    As a result of the wrongful conduct of Defendants, Plaintiff has lost his permit to carry a concealed firearm upon his person.  As a result of the loss of Plaintiff's permit to carry a concealed firearm his freedom of movement has been significant curtailed which has significantly impaired his quality of life and his ability to manage his businesses.  Plaintiff has been damaged in this regard in an amount subject to proof at trial.

112.    Plaintiff also seeks to recover his reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C § 1988.

### SIXTH CLAIM FOR RELIEF FOR FALSE IMPRISONMENT UNDER PRINCIPLES OF CALIFORNIA TORT LAW

### (Plaintiff ROBERT FOREST v. All Defendants)

113.    Plaintiff realleges and incorporates herein by reference paragraphs 1 though 112 as though fully set forth hereinafter.

114.    On or about November 8, 2006, Defendant FLOYD HIGDON ordered the arrest of Plaintiff.  Defendant FLOYD HIGDON ordered the arrest of Plaintiff without a warrant or any other legal process for an alleged felony violation of *California Penal Code* § 245, assault with a deadly weapon, which was not committed in the presence of Defendant FLOYD HIGDON or any other officer.  There was no probable cause or any other proper, legal cause for the arrest of Plaintiff.  As a result of the orders of Defendant FLOYD HIGDON, Plaintiff was taken into custody and confined against his will, whereupon Plaintiff remained in custody until he was able to post bail.

115.    Plaintiff did not commit any offense and Defendant FLOYD HIGDON did not have any reasonable or probable cause for believing that Plaintiff had committed any offense.

116.    Plaintiff is informed and believes and thereupon alleges that Defendant CITY OF FORT BRAGG and/or Defendant CITY OF FORT BRAGG POLICE DEPARTMENT tolerated, condoned, and ratified the wrongful acts and/or conduct of Defendant FLOYD HIGDON that resulted in the false arrest and/or false imprisonment of Plaintiff.

117.    As a result of the wrongful conduct of Defendants, Plaintiff has been damaged in an amount subject to proof at trial including, but not limited to, loss of use of his bail money, defense attorneys' fees, defense investigators' fees, and the other costs he incurred in defense of the criminal charges that were wrongfully filed against him.

118.    As a result of the wrongful conduct of Defendants, Plaintiff had to suffer the humiliation, anxiety, and mental and emotional distress associated with being a defendant in a felony criminal prosecution for over one year.

FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg*, *et al;* Case No. C 09-05970 NJV

119.    As a result of the wrongful conduct of Defendants, Plaintiff suffered damage to his good name and reputation in an amount subject to proof at trial.

120.    As a result of the wrongful conduct of Defendants, Plaintiff has lost his permit to carry a concealed firearm upon his person.  As a result of the loss of Plaintiff's permit to carry a concealed firearm his freedom of movement has been significantly curtailed, which has significantly impaired his quality of life and his ability to manage his businesses.  Plaintiff has been damaged in this regard in an amount subject to proof at trial.

121.    Plaintiff is informed and believes and thereupon alleges that the conduct of Defendant FLOYD HIGDON was malicious and/or oppressive.  Defendant FLOYD HIGDON acted with an intent to vex, injure, and annoy, with a conscious disregard of the Plaintiff's rights, and with a conscious disregard of the potential harm to Plaintiff.  Plaintiff is informed and believes and thereupon alleged that the conduct of Defendant FLOYD HIGDON was reprehensible, fraudulent, in blatant violation of law or policy, and that his tortuous conduct rose to a level of extreme indifference to the Plaintiff's rights, health, and welfare, which decent citizens should not have to tolerate.  Consequently, Plaintiff is entitled to an award of punitive damages against Defendant FLOYD HIGDON, pursuant to *California Civil Code* § 3294.

WHEREFORE, Plaintiff ROBERT FOREST requests that this Court enter a judgment:

1.    against all Defendants, jointly and severally, for compensatory damages, in an amount subject to proof at trial;

2.    against Defendant FLOYD HIGDON for punitive damages in an amount subject to proof at trial;

3.    awarding Plaintiff his reasonable attorney's fees and costs of suit;

- 32 -
FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg*, *et al;* Case No. C 09-05970 NJV

4.      for declaratory and/or injunctive relief against Defendants to prevent future violations; and,

5.      for such other and further relief as this Court may deem appropriate.

Dated: April 15, 2011                    LAW OFFICE OF DAVID M. KINDOPP


                                         DAVID M. KINDOPP
                                         Attorney for Plaintiff




**DEMAND FOR JURY TRIAL**

Plaintiff ROBERT FOREST hereby demands a jury trial as provided in Rule 38 of the Federal Rules of Civil Procedure.

Dated: April 15, 2011                    LAW OFFICE OF DAVID M. KINDOPP

                                         /S/ David M. Kindopp

                                         DAVID M. KINDOPP
                                         Attorney for Plaintiff

FIRST AMENDED COMPLAINT
*Robert Forest v. City of Fort Bragg, et al; Case No. C 09-05970 NJV*